IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

```
BENNY L. HERRON, as next of      *
kin to Jenefer Herron,           *
Deceased; and BRYON M. HERRON,   *
as next of kin to Jenefer        *
Herron, Deceased,                *
                                 *
     Plaintiffs,                 *
                                 *
     v.                          *    CV 123-069
                                 *
CIRCLE K STORES, INC.; SPIRIT    *
CK PORTFOLIO I LLC; and JOHN     *
DOES #1-10,                      *
                                 *
     Defendants.                 *
```

O R D E R

Before the Court is Plaintiffs' motion for leave to join an additional party and remand to state court. (Doc. 9.) For the following reasons, Plaintiffs' motion is **DENIED**.

I. BACKGROUND

On April 18, 2022, Jenefer Herron entered the Circle K convenience store located at 1739 Walton Way in Augusta, Georgia, and owned by Defendants. (Doc. 1-2, at 2.) While Ms. Herron was in the store, Yelena Buckner "began to cause a disturbance" and made threatening and racist remarks towards Ms. Herron. (Id.) Ms. Herron exited the convenience store and approached her vehicle, at which time Ms. Buckner shot and killed Ms. Herron. (Id. at 3.)

On May 1, 2023, Plaintiffs — Ms. Herron's biological children — filed this lawsuit in the State Court of Richmond County, Georgia, asserting negligence and premises liability claims against Defendants. (Id. at 2-8.)

On June 2, 2023, Defendants removed the case to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Doc. 1.) Defendants provide the Parties' citizenships as follows: (1) Plaintiffs are both citizens of Georgia; (2) Defendant Spirit CK Portfolio I, LLC is a citizen of Delaware, Arizona, Texas, and Maryland; and (3) Defendant Circle K Stores, Inc. is a citizen of Texas and Arizona. (Id. at 2-3.) Furthermore, Defendants contend that, although "Plaintiffs' Complaint does not expressly seek a money judgment against . . . Defendant[s] for a stated sum of money damages," it is more likely than not, based on the substance of Plaintiffs' claims, the amount in controversy exceeds $75,000. (Id. at 4.) Thus, according to Defendants, the Court has diversity jurisdiction over Plaintiffs' claims. (Id. at 2.)

On June 8, 2023, Defendants filed their Answer to Plaintiffs' Complaint. (Doc. 7.) In their Answer, Defendants denied Plaintiffs' allegation that Defendants "were the owners, operators, landowners, and managers of . . . the subject store . . . and exercised control over the premises, including the interior of the store and the parking lot." (Id. at 2; Doc. 1-2, at 3.) Also, in their eighth affirmative defense, Defendants claim

2

the shooting "was caused, produced, and brought about directly and proximately by the negligence or intentional acts of some other person or persons, or entities for whom Defendants [a]re not responsible for, and thus, Plaintiffs' claims are barred against Defendants." (Doc. 7, at 5.)

After reading the aforementioned portions of Defendants' Answer, Plaintiffs decided "to investigate the subject gas station and the design of its parking lot." (Doc. 9, at 6.) Upon further investigation, Plaintiffs noticed there is a car wash neighboring the Circle K that is owned by Sparkle Express Real Estate, LLC ("Sparkle"). (Id. at 3-4.) After obtaining photographs of the parking lot, Plaintiffs determined "the parking lot area and its ownership and control require[] Sparkle's presence in this matter" because they believe "the subject parking lot . . . was likely maintained, controlled[,] and potentially jointly-owned by [Sparkle]." (Id. at 3, 6.) Accordingly, Plaintiffs move for leave to join Sparkle. (Id. at 4.)

Plaintiffs acknowledge, however, that joining Sparkle would deprive the Court of subject-matter jurisdiction. (Id. at 7.) Plaintiffs attach a search from the Georgia Corporations Division of the Georgia Secretary of State that indicates Sparkle is a domestic Georgia limited liability company ("LLC") with its principal office address in Evans, Georgia. (Doc. 9-3, at 2.) But Plaintiffs are also citizens of Georgia. (Doc. 1, at 2; Doc.

3

9, at 7.) Therefore, Plaintiffs argue, joining Sparkle necessitates remand because Plaintiffs and Sparkle are Georgia citizens, and § 1332's complete-diversity requirement would not be satisfied. (Doc. 9, at 7.) Defendants respond to Plaintiffs' motion and object both to joining Sparkle and to remanding this case to the State Court of Richmond County. (Doc. 12.)

## II. LEGAL STANDARD

Because Plaintiffs seek the post-removal joinder of a non-diverse party, their motion is governed by 28 U.S.C. § 1447(e). See Ingram v. CSX Transp., Inc., 146 F.3d 858, 862 (11th Cir. 1998). Section 1447(e) provides: "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." Furthermore, "[d]istrict courts have broad discretion to decide whether, after removal, to permit joinder of a new defendant who would destroy diversity." Hickerson v. Enter. Leasing Co. of Ga., LLC, 818 F. App'x 880, 885 (11th Cir. 2020) (citations omitted).

Both the Eleventh Circuit and this Court have previously relied on the factors in Hensgens v. Deere & Co., 833 F.2d 1179, 1182 (5th Cir. 1987) to decide whether to permit joinder of a non-diverse defendant after removal. See Hickerson, 818 F. App'x at 885-86; Schneider v. KIR Augusta 1044, LLC, No. CV 112-055, 2012

4

WL 12926068, at *3-4 (S.D. Ga. Nov. 28, 2012). Accordingly, in determining whether joinder pursuant to § 1447(e) is appropriate, the Court considers: "(1) the extent to which the purpose of the [joinder] is to defeat federal jurisdiction, (2) whether plaintiff has been dilatory in asking for [joinder], (3) whether plaintiff will be significantly injured if [joinder] is not allowed, and (4) any other factors bearing on the equities." Hickerson, 818 F. App'x at 885 (internal quotation marks omitted) (quoting Hensgens, 833 F.2d at 1182).

### III. DISCUSSION

Before addressing the Hensgens factors, the Court first addresses whether Plaintiffs sufficiently alleged Sparkle's citizenship.

### A. Sparkle's Citizenship

Defendants argue Plaintiffs "have failed to provide the necessary citizenship information for this Court to determine [Sparkle's] citizenship." (Doc. 12, at 1 n.1.) The Court agrees. To sufficiently allege the citizenship of an LLC, a party must list the citizenships of the LLC's members. Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C., 374 F.3d 1020, 1022 (11th Cir. 2004). Here, Plaintiffs allege Sparkle is a Georgia citizen because it "is a domestic Georgia [LLC] with [its] principal office address in Evans, Georgia." (Doc. 9, at 4.) Plaintiffs, however,

5

never provide the citizenships of Sparkle's members, so Plaintiffs failed to sufficiently allege Sparkle is a Georgia citizen. Nevertheless, because neither Party disputes that joining Sparkle would defeat diversity, the Court will analyze whether joining Sparkle would be proper under Hensgens.

## B. Hensgens Factors

Even if Plaintiffs sufficiently alleged Sparkle is a Georgia citizen, the Court finds the Hensgens factors weigh in favor of denying Plaintiffs leave to join Sparkle.

### 1. The First Factor

The first Hensgens factor — the extent to which the purpose of Plaintiffs' motion is to defeat federal jurisdiction — weighs against granting Plaintiffs leave to join Sparkle. Hickerson, 818 F. App'x at 885 (quoting Hensgens, 833 F.2d at 1182). "[I]n determining a plaintiff's motive in seeking joinder, courts consider whether the plaintiff knew about the non-diverse defendant before removal and yet sought to add the party for the first time after removal." Hickerson, 818 F. App'x at 885. "An attempt to add a non-diverse defendant following removal, coupled with circumstances under which the plaintiff knew or should have known the identity of the would-be defendant at an earlier time, strongly indicates that the purpose of the plaintiff's amendment is to defeat federal jurisdiction." Schneider, 2012 WL 12926068, at *4 (internal quotation marks and citations omitted).

Plaintiffs contend this factor weighs in their favor because it was not until Defendants filed their Answer denying Plaintiffs' allegation "regarding the ownership, control[,] and management of the premises where the underlying shooting/homicide occurred" that Plaintiffs thought "to investigate the subject gas station and the design of its parking lot." (Doc. 9, at 6.) Plaintiffs then state, "[u]pon viewing photographs of the parking lot, it is clear that the parking lot area and its ownership and control requires Sparkle's presence in this matter," given Plaintiffs' contention Circle K and Sparkle share the lot. (Id.) Put differently, Plaintiffs argue they "are not making a deliberate attempt to avoid federal jurisdiction"; rather, Plaintiffs seek to add Sparkle post-removal because Defendants' Answer indicated to Plaintiffs that Defendants did not own the property where Ms. Herron was shot, and Defendants did not file their Answer until after removal to this Court. (Id. at 5.)

Defendants' Answer, however, did not provide Plaintiffs with any information that did not exist, or that they were not aware of, prior to originally filing suit. The subject parking lot has not changed in any way since Plaintiffs filed suit. (Compare id. at 3 (photograph of subject parking lot), and Doc. 9-4, at 1 (indicating the photograph of the subject parking lot was "located through Google Maps and its 'Streetview' function"), with Doc. 12-1 (including the same photograph from Google Maps's Streetview

7

function and indicating the image was captured in April 2012)). Moreover, the property reports attached to Plaintiffs' motion were available to Plaintiffs before they filed this lawsuit. (See Docs. 9-1, 9-2.) These circumstances indicate Plaintiffs "knew or should have known" Sparkle's identity at an earlier time, which "strongly indicates that the purpose of [Plaintiffs' motion] is to defeat federal jurisdiction." Schneider, 2012 WL 12926068, at *4 (internal quotation marks and citations omitted). As a result, the Court finds the first Hensgens factor weighs against granting Plaintiffs' motion.

2. The Second Factor

The second Hensgens factor — whether Plaintiffs have been dilatory in requesting leave to join Sparkle — also weighs against granting Plaintiffs leave to join Sparkle. Hickerson, 818 F. App'x at 885 (quoting Hensgens, 833 F.2d at 1182). Plaintiffs argue they were not dilatory because they did not know this case was removed until June 2, 2023; they did not realize Sparkle might share the subject parking lot until Defendants filed their Answer on June 8, 2023; and, once they realized Circle K and Sparkle might share the parking lot, Plaintiffs filed this motion shortly thereafter on June 26, 2023. (Doc. 9, at 6.) As discussed above, the information Plaintiffs rely on to support their motion was available before May 1, 2023 when they filed this lawsuit in the State Court of Richmond County. (Doc. 1-2, at 2.) Plaintiffs

apparently did not dig deeper into the facts of this case until after Defendants removed. Thus, Plaintiffs were dilatory in seeking amendment because they could, and should, have ascertained Sparkle's identity before filing this lawsuit — not two months later and only after removal. See Schneider, 2012 WL 12926068, at *4 ("finding plaintiff's request to add non-diverse defendant dilatory where plaintiff could have ascertained the identity of the person she sought to add prior to filing suit and prior to removal to federal court" (citing Sexton v. G & K Servs., Inc., 51 F. Supp. 2d 1311, 1314 (M.D. Ala. 1999))). Accordingly, the Court finds the second Hensgens factor weighs against granting Plaintiffs' motion.

3. The Third Factor

The third Hensgens factor — whether Plaintiffs will be significantly injured if joinder is not allowed — weighs against granting Plaintiffs leave to join Sparkle. Hickerson, 818 F. App'x at 885 (quoting Hensgens, 833 F.2d at 1182). The only argument Plaintiffs make as to this factor is "[i]f Plaintiffs are denied the right to bring Sparkle . . . into this litigation, they could be forced into parallel litigation in two different forums for the same wrongful death claim." (Doc. 9, at 6.) According to Plaintiffs, the "redundancy and duplication of costs and time" that would result from parallel litigation weighs the third Hensgens factor in their favor. (Id. (citing Starnes Davis Florie,

LLP v. GOS Operator, LLC, No. 12-0387-WS-N, 2012 WL 3870413, at *4 (S.D. Ala. Sept. 5, 2012)).) Recently, however, the Eleventh Circuit indicated "[b]eing made to litigate against [the non-diverse defendant] in state court does not necessarily amount to a significant injury — even if it results in duplicative efforts on the plaintiffs' part — such that this factor weighs in the plaintiffs' favor." Hickerson, 818 F. App'x at 886. Therefore, the Court finds the third Hensgens factor also weighs against granting Plaintiffs' motion.

4. The Fourth Factor

Finally, the fourth Hensgens factor — any other factors weighing on the equities — does not weigh significantly for or against granting Plaintiffs leave to join Sparkle. Hickerson, 818 F. App'x at 885 (quoting Hensgens, 833 F.2d at 1182). Plaintiffs assert that since "Georgia's premises liability statute imposes on owners or occupiers of land a duty to keep the premises safe for any invitees," determining who has "control" over the subject parking lot is crucial in deciding whether a defendant is liable. (Doc. 9, at 6 (citing O.C.G.A. § 51-3-1; Scheer v. Cliatt, 212 S.E.2d 29, 31 (Ga. Ct. App. 1975)).) Moreover, Plaintiffs contend that since "the parking lot shared by Defendants and Sparkle . . . is the situs of the underlying shooting," anyone with control over the parking lot may be jointly liable. (Id.) Thus, according

10

to Plaintiffs, the equities weigh in favor of allowing amendment to add Sparkle. (Id.)

The Court disagrees. Although Plaintiffs attach property reports describing the properties owned by Circle K and Sparkle, the reports do not indicate the subject parking lot is "shared." (See Docs. 9-1, 9-2.) In fact, nothing in this case, other than Plaintiffs' conclusory statements, suggests the subject parking lot is "shared" in such a way that Circle K and Sparkle could be jointly liable. As Plaintiffs make no other arguments regarding the equities, the Court finds the fourth Hensgen factor does not weigh in favor of or against granting Plaintiffs' motion.

In sum, the first three Hensgen factors weigh against granting Plaintiffs leave to join Sparkle as a party to this case, and the last Hensgens factor is neutral. Accordingly, the Court exercises its discretion to deny joinder here.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for leave to join an additional party and remand to state court (Doc. 9) is **DENIED**.

ORDER ENTERED at Augusta, Georgia, this 28th day of December, 2023.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA